John H. Gomez (SBN 171485)
John P. Fiske (SBN 249256)
Deborah S. Dixon (SBN 248965)
Stephanie S. Poli (SBN 286239)
GOMEZ TRIAL ATTORNEYS
655 West Broadway Suite1700
San Diego, CA 92101
Telephone:  (619) 237-3490
Fax:   (619) 237-3496

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFF SOJOURNER, individually and on behalf of all others similarly situated,<br><br>PLAINTIFF,<br><br>v.<br><br>ANTHEM, INC.,<br><br>DEFENDANT. | CASE NO._____<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1) Breach of Contract<br>2) Violations of the Fair Credit Reporting Act;<br>3) Violations of the California Records Act;<br>4) Violations of the California Unfair Competition Laws;<br>5) Negligence;<br>6) Invasion of Privacy;<br>7) Unjust Enrichment<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Cliff Sojourner ("Plaintiff"), by his attorneys, brings this action against Defendant Anthem, Inc., ("Defendant" or "Anthem") on behalf of himself and all others similarly situated. Plaintiff makes the following allegations upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge, as follows:

H0041039.                                           2                    CLASS ACTION COMPLAINT

## NATURE OF THE ACTION

1.      Anthem is one of the nation's leading health benefits companies, with nearly 69 million people served by its affiliated companies including more than 37 million enrolled in its family of health plans.   Anthem operates health plans under numerous brands, including Anthem Blue Cross, Anthem Blue Cross and Blue Shield, Blue Cross and Blue Shield of Georgia, Empire Blue Cross and Blue Shield, Amerigroup, Caremore, Unicare, Healthlink, and DeCare.

2.      One in nine Americans receives coverage for their medical care through Anthem's affiliated plans.  Anthem also employs approximately 48,000 people and generates annual revenue in the tens of billions of dollars.

3.      On February 4, 2015, Anthem revealed that its information technology system had been hacked (the "Security Breach"), exposing the names, personal health information, birthdays, Social Security numbers, income data, employment data, street addresses, email addresses, and other personal details (collectively referred to herein as "personal identifying information" or "PII") of about 80 million current and former customers and employees, making it the largest data breach ever disclosed by a health-care company.  All of Anthem's product lines were impacted by the Security Breach.

4.      Plaintiff brings this class action against Anthem for its failure to secure and safeguard the PII of Plaintiff and members of the proposed Class (defined below).

5.      Anthem's security failures enabled the hackers to steal this extremely sensitive information from within Anthem's system, placing Class members' PII at serious and ongoing risk. The hackers continue to use the information they obtained as a result of Anthem's inadequate security to exploit and injure Class members across the United States.

6.       The Security Breach was caused and enabled by Anthem's knowing violation of its obligations to abide by best practices and industry standards in protecting customers' and employees' personal information. Anthem grossly failed to comply with security standards and allowed its customers' and employees' personal identifying information to be compromised.

///

///

7.    Anthem failed to disclose the extent of the Security Breach and notify those affected in a timely manner. Anthem failed to take other reasonable steps to clearly and conspicuously inform its clients of the nature and extent of the Security Breach. Furthermore, by failing to provide adequate notice, Anthem prevented Class members from protecting themselves from the Security Breach.

8.    Accordingly, Plaintiff, on behalf of himself and other members of the Class, asserts claims for breach of express and implied contract, unjust enrichment, invasion of privacy, negligence, and violations of the Fair Credit Reporting Act, California Records Act, and California Unfair Competition Laws, and seeks injunctive relief, declaratory relief, monetary damages, statutory damages, and all other relief as authorized in equity or by law.

**PARTIES**

9.    Plaintiff Cliff Sojourner, a resident of Santa Clara County in the State of California, was a customer of Anthem, Inc. through December 2014.  Plaintiff's PII was comprised and stolen as a result of the Security Breach.

10.    Anthem is an Indiana corporation with its principal place of business in Indianapolis, Indiana.  Defendant is the second largest health-care benefits provider in the United States, with a 24% market share of the commercially insured population in California.

**JURISDICTION AND VENUE**

11.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of States other than Anthem's State of citizenship.

12.    This Court has personal jurisdiction over Anthem because Anthem has such minimum contacts with California to make this Court's exercise of jurisdiction proper. Anthem engages in continuous and systematic business operations within this State and this District, and maintains offices throughout the State, including within this District.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District and is thus deemed to be a citizen of this District.

Additionally, a substantial part of the events and/or omissions giving rise to the claims occurred within this district and division.

## FACTUAL ALLEGATIONS

*The Security Breach*

14.    Plaintiff bring this class action against Anthem for its failure to secure and safeguard his own and the Class members' PII, including names, birthdays, Social Security numbers, income data, employment data, street addresses, and email addresses.

15.    Anthem offers its customers – both individuals and employers – a variety of medical and health care products: PPOs, HMOs, various hybrid and specialty products, network-based dental products and health plan services.   As of November 2014, Anthem's health care plans' market share of the commercially insured United States population was at 28%.

16.    At this time, Anthem has confirmed that approximately 80 million current and former customers and employees became victims of the Security Breach when their PII was stolen from its database.   Reports issued in the wake of the breach point to Chinese state-sponsored hackers as the perpetrators of the theft.[1]

17.    Despite Anthem's knowledge of the Security Breach in late January 2015, it did not publicly disclose the breach until February 4, 2015, and did not begin notifying current and former customers or employees of the possibility that their PII had been accessed during the Security Breach for weeks thereafter.

18.    Anthem's security failures enabled the perpetrators of the Security Breach to steal highly sensitive identifying information from within Anthem's system and, on information and belief, subsequently appropriate Class members' identities and otherwise put Class members' PII at serious and ongoing risk. The hackers continue to use the information they obtained as a result of Anthem's inadequate security to exploit and injure Class members nationwide.

19.    The Security Breach was caused and enabled by Anthem's knowing violation of its obligations to abide by best practices and industry standards in protecting its customers' and

---

[1] *See* http://www.bloomberg.com/news/articles/2015-02-05/signs-of-china-sponsored-hackers-seen-in-anthem-attack (last visited February 6, 2015).

employees' PII. Because of the extremely sensitive nature of the PII at issue, Anthem had a duty to employ extraordinary measures to ensure that the PII was not accessed, compromised, or stolen. However, Anthem grossly failed to comply with security standards and allowed its customers' and employees' PII to be taken by thieves.

20.     Indeed, the FBI had warned last August that healthcare industry companies were being targeted by hackers, publicizing the issue following an attack on U.S. hospital group Community Health Systems Inc. that resulted in the theft of millions of patient records.

21.     The threat to the health care industry is particularly pressing, as medical identity theft is often not immediately identified by patients or their provider, giving criminals years to milk such credentials. That makes medical data more valuable than credit cards, which can be canceled by banks once fraud is detected.  According to security and identity theft expert Neal O'Farrell of Credit Sesame, Inc., "This is absolutely the worst kind of data breach, because thieves have stolen the information that's the most valuable, the most dangerous and impossible to change or cancel."

22.     Nevertheless, Anthem's security failures allowed widespread and systematic theft of Class members' personal identifying information. Defendant's actions did not come close to meeting the standards of commercially reasonable steps that should be taken to protect this information.

23.     To date, Anthem has failed to offer any explanation for the cause of the breach, how the hackers were able to access Plaintiff's and proposed Class members' PII, and what steps, if any, Anthem has taken or will take in the future to ensure that the PII stored in its database will be adequately protected.

24.     Plaintiff and the Class have suffered additional injury in fact and actual damages including: monetary losses arising from the costs associated with identity theft and the increased risk of identity theft caused by Anthem's wrongful conduct, and damages based on the opportunity cost and value of time that Plaintiff and the Class have been forced to expend to ensure their identities are not stolen as a result of the Security Breach.  Plaintiff and the Class have also suffered the loss of the inherent value of their PII itself.

///

*Security Breaches Lead to Identity Theft*

25.     The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use personal identifying data to open financial accounts, receive government benefits, and incur charges and credit in a person's name.[2]  As the GAO Report states, this type of identity theft is the most harmful because it may take some time for the victim to become aware of the theft and can adversely impact the victim's credit rating.   In addition, the GAO Report states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records . . . [and their] good name."

26.     According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumers' finances, credit history, and reputation, and can take time, money, and patience to resolve.[3]   Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[4]

27.     A person whose personal information has been compromised may not see any signs of identity theft for *years*. According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

---

[2] *See* http:///www.gao.gov/new.items/d07737.pdf .

[3] *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (2012), http://www.consumer.ftc.gov/articles/pdf-0009-taking-charge.pdf (last visited February 5, 2015).

[4] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number. *Id.*

28.     PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for a number of years.[5]  As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen credit card numbers and other PII directly on various Internet websites, making the information publicly available.

***The Monetary Value of Privacy Protections***

29.     At an FTC public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information as follows:

> The use of third party information from public records, information
> aggregators and even competitors for marketing has become a major
> facilitator of our retail economy. Even [Federal Reserve] Chairman
> [Alan] Greenspan suggested here some time ago that it's something
> on the order of the life blood, the free flow of information.[6]

30.     Though Commissioner's Swindle's remarks are more than a decade old, they are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.[7]

31.     The FTC has also recognized that consumer data is a new – and valuable – form of currency. In a recent FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point by observing:

---

[5] Companies, in fact, also recognize PII as an extremely valuable commodity akin to a form of personal property.  For example, Symantec Corporation's Norton brand has created a software application that values a person's identity on the black market. Risk Assessment Tool, Norton 2010, www.everyclickmatters.com/victim/assessment-tool.html.   *See also* T. Soma, ET AL, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009).

[6] *The Information Marketplace: Merging and Exchanging Consumer Data*, http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited February 5, 2015).

[7] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited February 5, 2015) ("Web's Hot New Commodity: Privacy").

> Most consumers cannot begin to comprehend the types and amount of
> information collected by businesses, or why their information may be
> commercially valuable.  Data is currency.  The larger the data set, the
> greater potential for analysis – and profit.[8]

32.    Recognizing the high value that consumers place on their PII, many companies now offer consumers an opportunity to sell this information to advertisers and other third parties.  The idea is to give consumers more power and control over the type of information that they share – and who ultimately receives that information.  And, by making the transaction transparent, consumers will make a profit from the surrender of their PII.[9]  This business has created a new market for the sale and purchase of this valuable data.[10]

33.    Consumers place a high value not only on their PII, but also on the *privacy* of that data. Researchers have already begun to shed light on how much consumers value their data privacy – and the amount is considerable. Indeed, studies confirm that "when [retailers'] privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[11]

34.    When consumers were surveyed as to how much they valued their personal data in terms of its protection against improper access and unauthorized secondary use – two concerns at issue here – they valued the restriction of improper access to their data at between $11.33 and $16.58 per website, and prohibiting secondary use to between $7.98 and $11.68 per website.[12]

---

[8] *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited February 5, 2015).

[9] *You Want My Personal Data? Reward Me for It*, http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited February 5, 2015).

[10] *See supra,* fn.9.

[11] Hann et al., *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003) at 2, *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (last visited February 5, 2015); Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (June 2011).

[12] *Id.*

35.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

***Damages Sustained By Plaintiff and the Class***

36.     Plaintiff and the Class have suffered damages arising from the costs associated with identity theft and the increased risk of identity theft caused by Anthem's wrongful conduct, particularly given the actual expenditures undertaken in response to this risk, as documented above.

37.     Plaintiff and the Class have suffered additional damages based on the opportunity cost and value of time that Plaintiff and the Class have been forced to expend to ensure their identities are not stolen as a result of the Security Breach.  Plaintiff and the Class have also suffered damages through the loss of the cognizable value inherent in their PII itself.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action on his own behalf, and on behalf of the following Classes pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3).  Specifically, the Classes consist of each of the following:

**Nationwide Class:**

All residents of the United States who had their personal information compromised as a result of the data breach of Anthem, Inc.'s corporate database.

Or, in the alternative,

**California Class:**

All residents of California who had their personal information compromised as a result of the data breach of Anthem, Inc.'s corporate database.

39.     Together, the Nationwide and California Classes shall be collectively referred to herein as the "Class."  Excluded from the Class are Defendant and the Judge(s) assigned to this

case.  Plaintiff reserves the right to modify, change or expand the Class definition after conducting discovery.

40.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the millions. The precise number of Class members and their addresses are presently unknown to Plaintiff, but may be ascertained from Anthem's books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

42.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

a.   Whether Anthem failed to use reasonable care and commercially reasonable methods to secure and safeguard its customers' and employees' sensitive personal identifying information;

b.   Whether Anthem properly implemented its purported security measures to protect customer and employee personal identifying information from unauthorized capture, dissemination, and misuse;

c.   Whether Anthem's conduct violates the California Records Act and/or Unfair Competition Laws;

d.   Whether Anthem's conduct constitutes a willful and/or negligent violation of the Fair Credit Reporting Act;

e.   Whether Anthem's conduct constitutes a breach of contract and/or unjust enrichment;

f.   Whether Anthem's conduct constitutes an invasion of privacy; and

g.  Whether Plaintiff and the other members of the Class are entitled to damages, injunctive relief, or other equitable relief.

43.  Anthem engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other Class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.

44.  **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class members because, among other things, all Class members were comparably injured through Anthem's uniform misconduct described above and were thus all subject to the Security Breach alleged herein.  Further, there are no defenses available to Anthem that are unique to Plaintiff.

45.  **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Class members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and Plaintiff will prosecute this action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

46.  **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Anthem, so it would be impracticable for Class members to individually seek redress for Anthem's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**VIOLATIONS ALLEGED**

**COUNT I**

**BREACH OF EXPRESS AND IMPLIED CONTRACT**

**(on Behalf of the Nationwide Class or, Alternatively, the California Class)**

47.    Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

48.    Anthem required customers of its various health care and medical products to provide Anthem with sensitive personal information, including names, birthdays, Social Security numbers, income data, employment data, street addresses, and email addresses.   Anthem also required its employees to provide this data as a condition of employment.   As a result, Anthem was required to safeguard and protect Plaintiff's and the proposed Class members' personal identifying information from being compromised or stolen.

49.    Because of these express contractual relationships, Anthem was obligated to protect the personal identifying information of Plaintiff and members of the Class.

50.    In addition, by providing such personal identifying information to Anthem, Plaintiff and the other members of the Class entered into implied contracts with Anthem whereby Anthem became obligated to reasonably safeguard Plaintiff's and the other Class members' sensitive, non-public information.

51.    Plaintiff and the other members of the Class would not have entrusted their private and confidential personal identifying information to Anthem in the absence of such contracts, both express and implied, with Anthem.

52.    Anthem breached its contracts with Plaintiff and the other members of the Class by failing to take reasonable measures to safeguard their personal identifying information.

53.    As a direct and proximate result of Anthem's breach, Plaintiff and the other Class members suffered and will continue to suffer damages including but not limited to the loss of their personal identifying information, loss of money, and costs incurred as a result of increased risk of identity theft, all of which have ascertainable value to be proven at trial.

## COUNT II

### WILLFULL VIOLATION OF THE FAIR CREDIT REPORTING ACT

### (on Behalf of the Nationwide Class or, Alternatively, the California Class)

54.     Plaintiff repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

55.     The Fair Credit Reporting Act ("FCRA") defines a "consumer reporting agency" as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

56.     FCRA defines a "consumer report" as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under [15 U.S.C. §] 1681(b).

15 U.S.C. § 1681a(d)(1).

57.     FCRA defines "medical information" as:

[I]nformation or data, whether oral or recorded, in any form or medium, created by or derived from a health care provider or the consumer, that relates to—(A) the past, present, or future physical, mental, or behavioral health or condition of an individual; (B) the provision of health care to an individual; or (C) the payment for the provision of health care to an individual.

15 U.S.C. § 1681a(i).

58.     FCRA specifically protects medical information, restricting its dissemination to limited instances. *See, e.g.*, 15 U.S.C. §§ 1681a(d)(3); 1681b(g); 1681c(a)(6).

59.     On a cooperative nonprofit basis or for monetary fees, Defendant regularly assembles consumer information including, among other things, insurance policy information, such as names, dates of birth, and Social Security Numbers of those insured; claims information, such as the date of loss, type of loss, and amount paid for claims submitted by an insured; and a description of insured items. Defendant also regularly utilizes interstate commerce to furnish such information on consumers (consumer reports) to third parties.

60.     Plaintiff's and Class members' PII constitutes Consumer Reports under FCRA, because this information bears on, among other things, their credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, physical/medical conditions, and mode of living, and is used or collected, in whole or in part, for the purpose of establishing Plaintiff's and the other Class members' eligibility for insurance to be used primarily for personal, family, or household purposes, and establishing rates for same.

61.     FCRA requires the adoption of reasonable procedures with regard to, *inter alia*, the confidentiality and proper utilization of personal and insurance information. 15 U.S.C. § 1681(b). FCRA also requires that consumer reporting agencies "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e.

///

62.     Defendant failed to adopt and maintain these and other reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b. In addition to properly securing, monitoring, and encrypting Plaintiff's and Class Members' PII on its database, accepted industry practice dictates Horizon should have taken the following measures:

> a)  Conducted periodic risk assessments and gap analysis relating to privacy and information security-related policies, processes and procedures; and

> b)  Developed privacy and information security related performance and activity metrics, such as the performance of ongoing compliance reviews, physical walkthroughs, hotline and complaint management—and ensure that these metrics were an integral part of Anthem's corporate governance program; and

On information and belief, Horizon failed to take reasonable and appropriate measures to secure, safeguard and protect Plaintiff's and Class Members' PII. Anthem also failed to place itself in a position to immediately notify Plaintiff and Class Members about the Data Breach.

63.     Plaintiff's and Class members' PII affected by the Data Breach constitutes medical information as defined by FCRA. Their PII included enrollment and clinical information, which constitute data relating to the provision of health care and past, present, or future physical, mental, or behavioral health or condition of an individual under FCRA's definition of medical information. *See* 15 U.S.C. § 1681a(i).

64.     Defendant's violation of FCRA, as set forth above, was willful or, at the very least, reckless, constituting willfulness. In light of the FBI's 2014 warning regarding health care companies such as Anthem's increased vulnerability to cyberattacks, Anthem's violation of the FCRA was willful.

65.     As a result of Defendant's willful or reckless failure to adopt and maintain reasonable procedures to limit the furnishing of Plaintiff's and Class members' PII to the purposes listed under 15 U.S.C. § 1681b, Plaintiff's and the other Class members' PII was disseminated to

unauthorized third parties, compromised, and stolen. Plaintiff suffered individual harm as a result of Defendant's willful or reckless violations of FCRA.

66.    As a further direct or proximate result of Defendant's willful or reckless violations of FCRA, as described above, Plaintiff and Class members were (and continue to be) injured and have suffered (and will continue to suffer) the damages described in detail above.

67.    Plaintiff and Class members, therefore, are entitled to compensation for their actual damages or statutory damages of not less than $100, and not more than $1,000, each, as well as attorneys' fees, litigation expenses and costs, pursuant to 15 U.S.C. § 1681n(a).

**COUNT III**

**NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT**

**(on Behalf of the Nationwide Class or, Alternatively, the California Class)**

68.    Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

69.    Defendant negligently failed to adopt and maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b.

70.    Plaintiff's and the other Class members' PII was wrongfully disseminated to the public as a direct and foreseeable result of Defendant's failure to adopt and maintain such reasonable procedures.

71.    As a direct or proximate result of Defendant's negligent violations of FCRA, as described above, Plaintiff's and Class members' PII was made accessible to unauthorized third parties in the public domain, compromised, and stolen. Plaintiff suffered individual harm as a result of Defendant's negligent violations of FCRA.

72.    As a further direct or proximate result of Defendant's negligent violations of FCRA, as described above, Plaintiff and Class members were (and continue to be) injured and have suffered (and will continue to suffer) the damages described in detail above.

73.    Plaintiff and the other Class members, therefore, are entitled to compensation for their actual damages, as well as attorneys' fees, litigation expenses, and costs, pursuant to 15 U.S.C. § 1681o(a).

///

# COUNT IV

## VIOLATIONS OF THE CALIFORNIA CUSTOMER RECORDS ACT

### (CAL. CIV. CODE § 1798.80, *et seq.*)

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

74.     Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

75.     Anthem is a "business" as that term is defined in Cal. Civ. Code § 1798.80(a).

76.     Plaintiff and the Class members are "individual[s]" as that term is defined in Cal. Civ. Code § 1798.80(d).

77.     Plaintiff and the Class members had "personal information" compromised as a result of the Security Breach, as that term is used in both Cal. Civ. Code 1798.80(e) and 1798.81.5(d)(1)(C).

78.     The Security Breach constitutes a "breach of the security system" pursuant to Cal. Civ. Code § 1798.82(g).

79.     Anthem's policies and procedures regarding data protection and retention violated Cal. Civ. Code § 1798.81.5, as Anthem's measures were unreasonable and wholly failed to prevent access to, and disclosure of, its current and former customers' and employees' personal information.

80.     Anthem also violated Cal. Civ. Code § 1798.82 by failing to notify Plaintiff and the Class members that their personal, confidential, and highly sensitive information had been compromised and/or stolen by hackers.

81.     As a result of Anthem's conduct as described herein, Plaintiff and the Class members have been injured.

82.     Plaintiff seeks monetary damages, including damages related to the acquisition of identity theft and credit monitoring services, injunctive and declaratory relief pursuant to Cal. Civ. Code § 1798.84(e), and attorneys' fees and costs.

///

///

///

**COUNT V**

**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.***

**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

83.     Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

84.     California Business & Professions Code § 17200, *et seq.* prohibits acts of "unfair competition", which is defined by Business & Professions Code § 17200 as including any "any unlawful, unfair or fraudulent business act or practice . . . ."

85.     Anthem's conduct constitutes unlawful and unfair practices because it constitutes violations of Cal. Civ. Code § 1798.80, *et seq.*, the Health Insurance Portability and Accountability Act of 1996, as well as actionable negligence.

86.     Anthem's conduct was unlawful as it failed to design, implement, and maintain reasonable security measures in protecting the personal, confidential, and highly sensitive data of its current and former customers and employees, including medical information protected by the CMIA and HIPAA, as well as by failing to timely notify Plaintiff and the Class about the Security Breach.

87.     Plaintiff and the Class members have suffered injuries as a direct and proximate result of Anthem's acts as alleged herein.  Plaintiff and the Class have suffered damages through the purchase of credit and identity theft monitoring service and the fees associated therewith, as well as the time invested by Plaintiff and the Class in protecting themselves from identity theft and other fraud as a result of Anthem's breaches, in addition to the risk for future identity theft and fraudulent activity.

88.     Plaintiff seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, and all other relief allowed under CAL. BUS. & PROF. CODE § 17200.

///

///

///

### COUNT VI

### NEGLIGENCE

**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

89.     Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

90.     Anthem owed Plaintiff and the Class a duty to exercise reasonable care in the retention and protection of Plaintiff's and the Class's personal, confidential, and highly sensitive information.  This duty included the development, implementation, and maintenance of policies and procedures that would protect Plaintiff's and the Class's personal, confidential, and highly sensitive information from access by unauthorized third parties and persons.

91.     Anthem also owed Plaintiff and the Class a duty to notify them, within a reasonable time, of the Security Breach and provide a comprehensive list that detailed, *inter alia*, what information was compromised in the attack. This failure has prevented members of the Class to take the necessary measures to avoid further damages from the data breach, including, *inter alia*, credit and identity theft monitoring services for persons whose information was disclosed.

92.     Anthem knew, or should have known, of the level of data security required to protect the information it was collecting and retaining from its current and former employees.  The FBI had warned in August 2014 that health care providers such as Anthem were at an increased risk of cyber attacks.

93.     Anthem's failure to develop, implement, and maintain adequate data collection, retention, and protection policies created a risk of harm to Plaintiff and the Class that was foreseeable.  Anthem knew, or should have known, that its data collection, retention, and protection policies were unreasonable and did not reflect industry standards.

94.     Anthem breached its duties owned to Plaintiff and the Class.  As a direct and proximate result of Anthem's breach, Plaintiff and the Class's personal, confidential, and highly sensitive information was breached from Anthem's corporate database and disseminated without their knowledge or consent.  This has caused Plaintiff and the Class damages through the purchase of credit and identity theft monitoring service, as well as the time invested by Plaintiff and the Class

in protecting themselves from identity theft and other fraud as a result of Anthem's breaches, in addition to the risk for future identity theft and fraudulent activity.

**COUNT VII**

**INVASION OF PRIVACY**

**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

95.     Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

96.     Plaintiff's and Class Members' PII is private information.

97.     Disseminating Plaintiff's and Class Members' PII would be offensive to a reasonable person.

98.     The public has no legitimate interest in being apprised of Plaintiff's and Class Members' PII.

99.     Defendant's failure to safeguard and protect Plaintiff's and Class Members' PII directly and proximately resulted in unreasonable publicity to the private lives of Plaintiff and Class Members.

100.     Plaintiff and Class Members have a legal interest in the privacy of their PII.

101.     Defendant's failure to safeguard and protect Plaintiff's and Class Members' PII deprived Plaintiffs and Class Members of their legal interest in the privacy of that information, causing them damages.

**COUNT VIII**

**UNJUST ENRICHMENT**

**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

102.     Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

103.     Plaintiff and Class Members are either parties to, or third-party beneficiaries of, insurance contracts with Defendant.

///

///

104.   Plaintiff and Class Members conferred a benefit on Defendant by paying health insurance premiums to Defendant, a portion of which covered the administrative costs associated with protecting its members' PII.

105.    Defendant has been unjustly enriched in retaining the portion of Plaintiff's and Class Members' premiums that covered the administrative costs associated with protecting its members' PII.

106.   It would be inequitable for Defendant to retain the portion of Plaintiff's and Class Members' premiums that covered the administrative costs associated with protecting its members' PII because Defendant misrepresented that it was protecting and safeguarding its members' PII when in fact it was not, causing injuries to Plaintiff and all Class Members.

107.   Plaintiff seeks restitution or disgorgement of Defendant's ill-gotten gains.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully requests that this Court:

A.   Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.   Appoint Plaintiff as the representative of the Class and his counsel as Class counsel;

C.   Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class members are entitled;

D.   Award pre-judgment and post-judgment interest on such monetary relief;

E.   Grant appropriate injunctive and/or declaratory relief;

F.   Award reasonable attorneys' fees and costs; and

G.   Grant such further relief that this Court deems appropriate.

///

///

///

///

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: February 10, 2015                         Respectfully submitted,

                                                 By: /s/ John P. Fiske

                                                 John H. Gomez, Esq.
                                                 John P. Fiske, Esq.
                                                 Deborah S. Dixon, Esq.
                                                 Stephanie S. Poli, Esq.
                                                 **GOMEZ TRIAL ATTORNEYS**
                                                 655 West Broadway Suite1700
                                                 San Diego, CA 92101
                                                 Telephone:  (619) 237-3490
                                                 Fax:   (619) 237-3496

                                                 Katrina Carroll (To Apply *Pro Hac Vice*)
                                                 Kyle A. Shamberg (To Apply *Pro Hac Vice*)
                                                 **LITE DEPALMA GREENBERG, LLC**
                                                 211 W. Wacker Drive
                                                 Suite 500
                                                 Chicago, IL 60613
                                                 (312) 750-1265
                                                 kcarroll@litedepalma.com
                                                 kshamberg@litedepalma.com